IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK RUSSO, | ) |
|         Plaintiff, | ) No. 16 C 9526 |
| v. | ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Frank Russo ("Claimant" or "Mr. Russo") has moved for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (doc. # 18: Pl.'s Mot. for Summ. J. and Mem. in Support of Sum. J.). The Commissioner has filed her own motion seeking affirmance of the decision denying benefits (doc. # 28: Def.'s Mot. for Sum. J.), and Claimant has filed a reply (doc. # 29). For the following reasons, Mr. Russo's motion for remand is granted and the Commissioner's motion is denied.

I.

Mr. Russo filed for DIB and SSI on August 20, 2013, claiming an onset date of January 1, 2013 (R. 235-36). In his application for benefits, Mr. Russo claimed he suffered from "nerve pain, degenerative disc disease, soft tissue damage, hard to sit, stand and walk" (R. 76). After his

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On November 29, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 12).

claims were denied initially on October 3, 2013, and on reconsideration on March 6, 2014, Mr. Russo participated in a hearing before an Administrative Law Judge ("ALJ") on July 17, 2014 (R. 94, 119). At the hearing, Mr. Russo alleged complaints that were not part of the medical record; the ALJ adjourned the hearing so that Mr. Russo could undergo two consultative examinations (R. 72-73). At a reconvened hearing on November 4, 2014, Mr. Russo testified, as did a vocational expert ("VE") (R. 37-49). On March 23, 2015, the ALJ denied benefits and the Appeals Council affirmed the denial on June 7, 2016, making it the final opinion of the Commissioner (R. 4-6, 21-31). *See* 20 C.F.R. § 404.981; *Lanigan v. Berryhill,* 865 F.3d 558, 563 (7th Cir. 2017).

## II.

Mr. Russo alleges only a single error by the ALJ: her decision to reject a consultative examiner's opinion that Mr. Russo was significantly limited in his ability to reach (Pl. Mem. in Support of Summ. J. at 1). Because of the limited nature of Claimant's arguments, we will set forth only those facts relevant to this issue.

At the July 17 hearing, Mr. Russo testified that he was unable to reach his arms over his head, but that he could reach out in front of him, although, if he reached too far, the pain increased and anything he was holding fell out of his hands (R. 59-60). He also testified that his hands tended to get numb, making it difficult for him to grasp small objects (R. 69). With respect to his activities of daily living, Mr. Russo testified that he was currently living in a tent and cooking his meals over a fire pit (R. 61-62). He was able to do laundry, dress and bathe himself, make his bed (when he lived in a home), drive, and sew, but these activities took him a long time because of his chronic pain (R. 61-65). Claimant also testified that he enjoyed drawing and liked

2

to whittle, but that the numbness in his hands had made this activity difficult in recent months (R. 63).

At the end of this hearing, the ALJ stated that he needed to send Mr. Russo for two consultative examinations to provide further information about Mr. Russo's limb strength and sensation (R. 72). Specifically, the ALJ indicated that he wanted to send Mr. Russo to a neuropsychologist for "1202 type of testing" and a more general internist to test his strength of limbs and "strength sensations" (R. 72-73). Thereafter, on August 2, 2014, Mr. Russo was examined by internist Kalyani Perumal, M.D. (R. 591).[3] Dr. Perumal completed an "internal medicine report" after the examination, which was comprised of a narrative summary of the examination, a chart describing Mr. Russo's range of motion for various joints, and a medical source statement form.

In the introduction to the narrative summary, Dr. Perumal reported that Mr. Russo described his present issues as residual headaches since undergoing brain surgery five years earlier, chronic low back pain radiating into his feet, and chest pain upon deep breathing (R. 591). The summary goes on to note that Mr. Russo had limited shoulder movements bilaterally and that his power in his upper extremities was reduced to 4/5 because of pain (R. 593, 597). In a chart describing the range of motion for each of Mr. Russo's limbs, Dr. Perumal noted that Mr. Russo had normal adduction, internal rotation, and external rotation of the shoulders and reduced range of motion with respect to flexion, extension, and abduction of both his left and right shoulders (R. 594).[4] In the "medical source statement" that accompanied the report, under the

---

[3] The neuropsychological testing Mr. Russo underwent with a different doctor is not at issue, and so we do not need to discuss it further.

[4] As shown by diagrams in the record, flexion refers to the movement of the straightened arm forward and up over the head (or as far up as possible); Mr. Russo's flexion range was 90/150 in both shoulders. Extension refers to the movement of the straightened arm backwards; Mr. Russo's extension range was 20/40 in both shoulders.

3

section titled "Use of Hands," Dr. Perumal checked boxes indicating that, with respect to his right hand, Mr. Russo could reach overhead, reach elsewhere, and push or pull occasionally (1/3 of the work day), and that he could handle, finger and feel frequently (1/3 to 2/3 of the work day) (R. 602). Handwritten notes below the checked boxes appear to say "limitation of movement of . . . both shoulders since MVA [motor vehicle accident]. Shoulder flexion/abduction 90 degrees" (*Id.*).[5]

On September 24, 2014, Dr. Perumal completed a second medical source statement, although she had not examined Mr. Russo again. In this statement, under the heading "Use of Hands," Dr. Perumal checked boxes opining that with respect to his right hand, Mr. Russo could never reach overhead and could occasionally reach elsewhere, handle, finger, feel, and push or pull (R. 609). With respect to Mr. Russo's left hand, Dr. Perumal opined that he could occasionally reach overhead, reach elsewhere, handle, finger, feel, and push or pull (*Id.*). A handwritten note below the chart says "limited Rt. shoulder movements" (*Id.*).

At the second hearing, on November 4, 2014, Mr. Russo testified that he was generally in more pain than he had been in at the earlier hearing, and that he can "barely shave, get my arms up. . . (R. 42). The ALJ did not question him about his additional pain or discuss Dr. Perumal's findings. The ALJ gave the VE a hypothetical, asking her to consider someone who could lift and carry 10 pounds occasionally, carry less than 10 pounds frequently, stand and/or walk a total of two hours during an eight hour work day, sit at least six hours during an eight hour work day, never climb ladders, ropes, or scaffolding, and no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist (R. 46). The hypothetical also described an

---

Abduction refers to the movement of the straightened arm out to the side and then up over the head (or as far up as possible); Mr. Russo's abduction range was 90/150 in both shoulders (R. 594).

[5]Additional notes are less clear but possibly say "extension and int. and ext. rotation" with a degree estimate that is not discernible (R. 602).

4

individual who should avoid concentrated exposure to work hazards such as unprotected heights, dangerous moving machinery, and noise at the jackhammer level, and who could reach overhead with the right upper extremity no more than frequently (*Id.*). Given this hypothetical, the VE testified that such an individual could perform certain sedentary and unskilled jobs, including a circuit board tester, an information clerk, and an order clerk (R. 46-47).

### III.

In her opinion, the ALJ went through the familiar five step process for determining disability. 20 CFR 404.1520(a) and 416.920(a). At Step One, the ALJ determined that Mr. Russo had not engaged in substantial gainful activity since his onset date (R. 23). At Step Two, the ALJ found that Mr. Russo had the severe impairments of obesity, small disc herniation, minimal degenerative disc disease, a history of craniotomy, and headaches (R. 24). At Step Three, the ALJ found that Mr. Russo's impairments did not meet or medically equal a Listing (R. 25). Before reaching Step Four, the ALJ assigned Mr. Russo a Residual Functional Capacity ("RFC") to perform sedentary work except that he can never climb ladders, ropes, and scaffolds, and he can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, bend, or twist (R. 26). The ALJ further found that Mr. Russo must avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery, and noise at the jack hammer level (*Id.*) He can reach overhead no more than frequently with his right upper extremity, and due to headaches, is limited to work involving simple, routine, repetitive tasks (*Id.*). Finally, Mr. Russo must be allowed to use a cane as needed to walk to and from his work station (*Id.*). This RFC included the same reaching limitations as in the hypothetical the ALJ had given the VE at the November 4, 2014 hearing (R. 46).

5

In supporting her RFC determination, the ALJ first found that Mr. Russo's testimony about his limitations in general was not entirely credible (R. 27). Specifically, the ALJ noted that, despite alleging an inability to work, Mr. Russo visited a hospital emergency room in February 2012 to obtain a release to work form (R. 27, 416). Next, the ALJ explained why she found Mr. Russo's complaints about his hands to be not entirely credible.[6] Citing to Dr. Perumal's report, the ALJ stated there is "no medical evidence or objective findings of hand limitations" (R. 27). She also wrote that Claimant admitted to being able to draw, sew, whittle, and perform a number of daily activities including cooking food over a fire pit, which required good use of the hands to perform tasks such as piling wood, maneuvering a match or lighter, and opening packages and using utensils (*Id.*). Mr. Russo could also drive, which the ALJ noted required the ability to use his hands to open the door with a key, manipulate the key or remote, press buttons and dials, hold the steering wheel and manipulate the "stick" for the turn signal (*Id.*).

In her opinion, the ALJ acknowledged that Dr. Perumal found Mr. Russo's upper extremity strength to be 4/5 because of pain in his shoulders (R. 25-26). She also noted that Mr. Russo testified that he was unable to lift his arms over his head because of pain (R. 27). However, the ALJ gave no weight to either of Dr. Perumal's two medical source statements.[7] With respect to the August 2, 2014 statement, the ALJ states that "limitations such as use of

---

[6] The medical source statement documents that the ALJ reviewed categorize both fine motor skills (fingering, feeling) and gross motor skills (reaching) under the heading "use of hands." Therefore, even though Claimant argues that the ALJ erred only with her treatment of Mr. Russo's ability to reach, we will summarize all of the ALJ's discussion of Mr. Russo's ability to use his hands as it relates to both gross and fine motor skills, since there is some overlap in the ALJ's reasoning.

[7] The ALJ also discounted Dr. Perumal's opinion on the ground that "the doctor admits that the opinion is based upon the claimant's input" (R. 28). In her brief, the Commissioner concedes that the record does not support this justification by the ALJ, but contends the error is harmless because the ALJ otherwise supports her decision to discount Dr. Perumal's opinions (Comm. Mot. for Summ. J. at 7).

6

hands is not seen in the medical record or evaluation, as discussed earlier in this decision" (R. 28). The ALJ gave no weight to the September 24, 2014 medical source statement for the same reasons, as well as because no medical examination showed the limitations set forth in the statement (R. 29).

The ALJ gave "some weight" to the opinions of the non-examining state agency medical consultants, who opined in September 2013, and on reconsideration in March 2014, that Mr. Russo could perform a restricted range of light work (R. 28, 90-92, 115-118). The ALJ noted, however, that recent imaging of the spine, plus Claimant's obesity, led her to reduce Mr. Russo's RFC to sedentary work (*Id.*). Neither of the state agency medical consultants gave an opinion about Mr. Russo's ability to reach.

## IV.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Stepp v. Colvin,* 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin,* 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). However, in rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart,* 395 F.3d 737, 744 (7th Cir. 2005).

In this case, we remand because the ALJ failed to properly consider Dr. Perumal's findings that Mr. Russo had limitations in reaching when constructing Mr. Russo's RFC. It is true that Dr. Perumal was not a treating physician, and thus, her opinion is not entitled to

controlling weight. *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). But before rejecting the opinion outright, the ALJ was required to explain her reasons for doing so with some specificity. *Simila*, 573 F.3d at 515.

As we stated above, the ALJ gave two reasons for rejecting Dr. Perumal's August opinion, (1) that "the doctor admits that the opinion is based on upon the claimant's input" (R. 28), and (2) that the medical record did not support any hand limitations (*Id.*). With respect to the September opinion, the ALJ rejected it for the same reasons as she rejected the August opinion, and additionally, because "an actual medical examination did not show limitations that are set forth in the medical source statement" (R. 29). These explanations are insufficient to survive even the deferential review that is required.

*First,* while most of the medical evidence in the record concerns Mr. Russo's back problems, it was his testimony at the first hearing about, *inter alia*, his trouble with his hands and arms that led the ALJ to order two consultative examinations to test his limb strength and sensations. Indeed, the medical report Dr. Perumal completed contains specific findings about Mr. Russo's range of motion in various joints. Dr. Perumal translated these findings into her August 2014 opinion that Mr. Russo was limited to only occasional reaching with his right arm. Contrary to the ALJ's statement, these findings are exactly what she sought when she sent Mr. Russo for the examinations -- medical evidence regarding any limitation in Mr. Russo's use of his limbs, including reaching. Therefore, the ALJ's reason for rejecting Dr. Perumal's opinion – that it is not supported by the medical evidence – fails to address the evidence of record. *Stark v. Colvin*, 813 F.3d 684, 687 (7th Cir. 2016) (ALJ's failure to consider entire line of objective evidence supporting Claimant's claim of disabling pain is grounds for remand).[8]

---

[8]The Commissioner argues that the ALJ found that Dr. Perumal's opinion was inconsistent with her examination findings, and that this inconsistency justified the ALJ's rejection of the opinion (Comm. Resp. to Mot.

8

*Second,* we are troubled by the ALJ's decision to reject Dr. Perumal's opinions because they were based on Claimant's input, and not upon the medical record (R. 28). The ALJ is simply wrong; there is no evidence that Dr. Perumal's August opinion stems from Claimant's input and ignores Dr. Perumal's examination of Mr. Russo. While the Commissioner argues that this error (which the Commissioner concedes) is harmless, we disagree. The ALJ's justification for rejecting both of Dr. Perumal's opinions because they were based solely on Claimant's input is a gross misreading of the record that may well have tainted the ALJ's overall view of Dr. Perumal's report. Further, to the extent that the ALJ assumes that the September opinion was based on Claimant's input because there was no intervening examination between August and September, there was no need for the ALJ to indulge in assumptions. If those reports contained inconsistencies or left open questions, the ALJ could have questioned Dr. Perumal about the differences, or, at the least, asked Mr. Russo about the two reports when he testified at the November hearing. Despite being the one who asked for the report, the ALJ did neither.

*Third,* after rejecting Dr. Perumal's recommendation with respect to Mr. Russo's ability to reach, the ALJ cited no evidence and gave no explanation to support the reaching limitation she did find – that Mr. Russo could frequently reach with his right arm and had no limitation on reaching with his left arm. In the absence of support for her RFC, the ALJ failed to build a logical bridge from the evidence to her determination that Mr. Russo had a greater ability to reach than found by Dr. Perumal. And while the Commissioner argues that the error is harmless because the VE testified that Mr. Russo could perform sedentary work even if he had limitations in using one of his arms, this argument misreads the VE's testimony. In answering a question about a Claimant who needed to use a cane, the VE testified that he would limit such a person to

---

for Summ. J. at 5). This is a mischaracterization of the ALJ's opinion; she did not state that Dr. Perumal's opinion and examination findings were inconsistent with respect to Mr. Russo's ability to reach. Instead, the ALJ wrongly concluded that no medical evidence supported Dr. Perumal's opinion.

9

sedentary work, because use of the cane (for non-sedentary work) would take away use of one upper extremity. The VE did not testify that sedentary work only required the use of a single arm; in fact, when questioned further by Mr. Russo's attorney, the VE stated that a full range of sedentary work required frequent bilateral handling and fingering; *i.e.*, the use of both hands (R. 49). In addition, even considering only the August report, Mr. Russo could reach overhead and in other directions only "occasionally." The VE did not opine as to whether a person with that limitation could perform the work he identified.

Finally, the ALJ's determination that Mr. Russo was not credible because he was able to perform a number of daily activities does not address Claimant's ability to reach. The Court will not overturn an ALJ's credibility finding as long as the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). In this case, while the ALJ describes in detail the way that Mr. Russo would need to use his hands to perform such tasks as driving, building a fire, sewing, or whittling, these activities all require fine motor skills; none of them (at least as discussed by the ALJ) require one to reach, particularly over one's head. Nothing in Mr. Russo's testimony about his activities of daily living suggests that he was able to perform tasks that required reaching over his head, and thus, the ALJ's determination that Mr. Russo was not credible because of his daily activities does not undermine the evidence that he could not reach overhead.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (doc. # 18) is granted and the Commissioner's motion for summary judgment (doc. # 28) is denied. The case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_/s/ Sidney I. Schenkier_
**SIDNEY I. SCHENKIER**
United States Magistrate Judge

**DATE: December 19, 2017**